IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| KPRS HAWAII CONSTRUCTION, INC.,<br><br>Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>BIG ISLAND ELECTRIC, INC.,<br><br>Defendant/Counterclaimant. | Civil No. 24-00106 MWJS-KJM<br><br>ORDER ON PRETRIAL MOTIONS |

**INTRODUCTION**

This case concerns a relationship between a general contractor and a subcontractor that went sour. The general contractor, KPRS Hawaii Construction, Inc. ("KPRS"), had retained the services of subcontractor Big Island Electric, Inc. ("BIE") to complete electrical work for the construction of a coffee farm and distillery project in Kailua-Kona, Hawaiʻi. KPRS contends that BIE performed shoddy work that substantially delayed the project and ultimately required KPRS to retain a different subcontractor to complete it; BIE rejoins that it was, in fact, KPRS (and others) that caused the delays. This lawsuit followed, and in an earlier decision, the court denied cross-motions for summary judgment because there were genuine disputes of material fact that must be resolved at trial. *See KPRS Haw. Constr., Inc. v. Big Island Elec., Inc.*, Civ. No. 24-00106, 2026 WL 221845 (D. Haw. Jan. 28, 2026).

A jury trial is now set to begin on December 2, 2026, and in advance of that date, the parties have filed several pretrial motions. The court held a hearing on the motions on October 28, 2026, and it now resolves them through this order.

For reasons that follow, the court GRANTS in part and DENIES in part BIE's Motions *in Limine* Nos. 1 and 2, Dkt. Nos. 142 and 143; DENIES KPRS's Motion *in Limine* No. 1, Dkt. No. 144, as moot; GRANTS KPRS's Motion *in Limine* No. 2, Dkt. No. 145; DENIES KPRS's Motion *in Limine* No. 3 as premature, Dkt. No. 146; DENIES KPRS's Motion *in Limine* No. 4, Dkt. No. 147; and DENIES in part and GRANTS in part KPRS's motion to exclude BIE's two proposed witnesses, Dkt. Nos. 139 and 140.

## DISCUSSION

### A. The Motions *in Limine*

#### 1. BIE's Motion *in Limine* No. 1 [Dkt. No. 142]

In its first motion *in limine*, BIE seeks to exclude the testimony of KPRS's proposed lay witness Nickolas Espinoza, who would testify about alleged damages KPRS seeks to recover in this lawsuit. BIE contends that KPRS failed to identify Espinoza as a possible witness in both its initial disclosures (under Federal Rule of Civil Procedure 26) in October 2024 and in response to the Federal Rule of Civil Procedure Rule 30(b)(6) deposition notice that BIE served on November 7, 2025. BIE argues that, as a result of these omissions, it lost the opportunity to depose him before the discovery cutoff on November 26, 2026. According to BIE, KPRS did not disclose Espinoza as a

possible witness until its initial pretrial statement on March 9, 2026, and when BIE's counsel requested, in July 2026, that KPRS make Espinoza available for a deposition, KPRS refused. Dkt. No. 142-1, at PageID.2969–72.

KPRS does not dispute any of these assertions, but opposes on the ground that Espinoza's identity as a witness was adequately made known to BIE through other aspects of the discovery process and that Federal Rule of Civil Procedure 37 does not require the sanction of exclusion under the circumstances. Dkt. No. 149. KPRS also contends that any prejudice to BIE—including its inability to depose Espinoza—"is entirely of its own making," because BIE never moved to reopen discovery or to compel Espinoza's deposition, despite having received KPRS's initial pretrial statement nearly eight months before the scheduled start of trial. *Id.* at PageID.3375–77.

In resolving this dispute, the court is mindful that the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. A court's administration of the Rules should not encourage a party to make inadequate initial disclosures or responses to Rule 30(b)(6) deposition notices. Nor should it encourage a party to sandbag its adversary and the court by holding off on raising a plausible argument about noncompliance until it is too late to do anything about it.

In this case, each of these concerns is implicated. KPRS's initial disclosures and response to the Rule 30(b)(6) deposition notice did not identify Espinoza as a possible witness. And while KPRS now argues that Espinoza's identity as a witness was adequately disclosed in other ways, it still offers no explanation for why it failed to identify him until well after the discovery cutoff. If, after all, KPRS is right that it gave BIE enough information to infer that Espinoza was a possible witness, then it must also be right that KPRS could just as easily—indeed, far more easily—have identified him as one before discovery closed. By failing to do so, KPRS's counsel put their client's interests on a knife edge, as this motion *in limine* amply demonstrates. At the same time, KPRS is correct that BIE has known of KPRS's intention to call Espinoza as a witness since March of this year. And while BIE asked KPRS's counsel if it would voluntarily agree to an out-of-time deposition, BIE chose not to move to reopen discovery at a time when the court could have accommodated BIE's request without delaying trial. In making that choice, BIE's counsel, too, have put their client's interests in peril.

Having carefully considered the parties' contentions, and mindful of the competing interests at stake, the court GRANTS in part and DENIES in part BIE's motion. It is granted in this limited respect: as the court explained at the hearing, KPRS is DIRECTED to make Espinoza available for a limited deposition by video teleconference. Given that the trial date is still over a month away, this more limited

form of relief may be granted without having to delay trial. And given the amount of time left before trial, a deposition at this stage still gives BIE a sufficient amount of time to preview Espinoza's expected testimony and to prepare to confront it at trial.

The court otherwise denies the motion, and in doing so, its reasoning proceeds in three steps.

First, although KPRS's initial disclosures and response to BIE's Rule 30(b)(6) deposition notice did not identify Espinoza, it is at least arguable that he was adequately disclosed as a potentially significant witness in a variety of other timely ways. As KPRS explains, it produced 36 documents in September 2025—that is, prior to the discovery cutoff—that included Espinoza's name. Then, Espinoza was mentioned in the deposition testimony of at least five other individuals who were deposed prior to the discovery cutoff—one of whom explicitly identified Espinoza as among the people performing "analysis for the purpose attributing a damage figure" through BIE's work. Dkt. No. 149, at PageID.3377 (quoting Ex. A, at 138:22–139:7). Given these circumstances, it is at least arguable that Espinoza's identity as a possible witness "ha[d] otherwise been made known to [BIE] during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).[1]

[1] BIE argues that it has not received a copy of any document containing an analysis of that sort in discovery. But as KPRS explained at the hearing, the document is internal work product, consisting merely of mathematical calculations of the total damages based on underlying materials that have been produced to BIE. And KPRS represents that it is those underlying materials, not any internal work product, that it

Second, when a witness's identity is otherwise made known, Rule 26(e)(1)(A) does not require explicitly naming that person as a witness in a supplement to the initial disclosures. That is because, as KPRS rightly notes, courts "do not construe the duty to provide witness disclosures in a manner that puts form over substance." Dkt. No. 149, at PageID.3379 (quoting *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 615, 617 (D. Nev. 2020)). So under the circumstances, KPRS had a good-faith basis for believing that it had substantively complied with Rule 26(a)(1)(A)(i), even though it could have avoided any doubt by simply identifying Espinoza as a witness before the discovery cutoff.

Third, given that KPRS's compliance with Rule 26 was at least arguable, BIE should not have sat on its rights. To be sure, Rule 37(c)(1) "generally provides that if a party fails to produce information required by Rule 26(a), they may not use the information at trial." *Scarlet Honolulu, Inc. v. Honolulu Liquor Comm'n.*, Civ. No. 21-00457, 2024 WL 4224861, at *4 (D. Haw. Sept. 17, 2024). And this is a "self-executing, automatic sanction" meant to "provide a strong inducement for disclosure of material." *Id.* (cleaned up). But a party can show that the exclusion sanction should not apply—either because of substantial justification or harmlessness—and four factors guide a court's assessment of whether that burden has been met under Rule 37: "(1) prejudice

---

will seek to admit at trial. Although the court will of course not allow KPRS to use as an exhibit at trial any document that it has not produced to BIE, it reserves decision on whether the document should become admissible if it is produced in advance of Espinoza's deposition and BIE has a full opportunity to examine Espinoza about it.

or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Id.* at *5 (cleaned up).

Here, the fact that KPRS's discovery disclosures were at least arguably sufficient to satisfy Rule 26(a) also serve, in effect, to tilt the Rule 37 analysis against the exclusion sanction. BIE cannot claim surprise that Espinoza will be a witness. Nor was BIE without a way to seek a timely remedy if it wished to depose him; BIE simply chose not to move to reopen discovery or compel a deposition, which the court may well have granted. Meanwhile, delaying trial is not necessary to allow Espinoza to testify or to avoid prejudice to BIE. BIE has been aware of KPRS's intention to call him since March of this year; it has no serious claim of prejudice, given the lack of any surprise. And, as noted above, there is still time to allow BIE to depose Espinoza now, and the court has indeed ordered KPRS to make him available for a limited deposition; to the extent there remains any prejudice to BIE from not being able to conduct this deposition sooner, it is not only minimal but is largely the function of BIE not having asked for it sooner. Finally, because KPRS has at least a good faith argument that it disclosed Espinoza in other ways through the discovery process, it cannot be said to have acted in bad faith by not explicitly identifying him as a witness before March.

In short, in the circumstances of this case, excluding Espinoza as a witness is not warranted. This is not a satisfying result, because KPRS's counsel allowed their cleats

to nearly hit the chalk on this play. But it is enough to say that close calls often go either way, and as with all close calls, counsel should not count on it going their way the next time. BIE's first motion *in limine* is DENIED.

**2. BIE's Motion *in Limine* No. 2 [Dkt. No. 143]**

BIE's second motion *in limine* is a variation on the theme of its first: BIE argues that KPRS should not be permitted to seek any monetary damages because it failed to provide a calculation of damages in its initial and supplemental disclosures, as required by Rule 26(a)(1)(A)(iii). KPRS does not meaningfully dispute that it failed to provide these calculations, but it argues that any failure to do so was harmless.

The same considerations as those mentioned above bear on this issue. But while the call is again a close one, the court concludes that KPRS has the better of this argument. The disclosures and discovery process in this case adequately revealed the nature of the damages KPRS seeks in this case. Dkt. No. 150, at PageID.3628–30. That included an initial disclosure identifying damages "in the amount of $1,734,560.00." *Id.* at PageID.3628. It included identification of the components of that sum: the Motor Control Center "and its shipping, repurchasing and installing equipment, drywall repairs, painting, removing and reinstalling fixtures, and 'all other rework and additional work' necessitated by BIE's faulty workmanship." *Id.* KPRS also disclosed that damages "could increase by as much as $500,000.00." *Id.* And KPRS itemized the categories of its damages in its interrogatory responses. *Id.* Thereafter, BIE had the

opportunity to depose multiple KPRS employees, including two specifically designated for damages. *Id.* at PageID.3629–30. And KPRS and the subcontractor that replaced BIE on the project produced relevant records that supplied additional information about KPRS's damages calculations. *Id.* at PageID.3629. On these facts, the Rule 37 factors weigh against exclusion.

Although BIE notes that courts have sometimes indicated a willingness to exclude damages as a result of a failure to provide the required calculation, the facts of those cases are readily distinguishable. To take just one example, although BIE relies on *Scarlet Honolulu*, that case instead highlights why exclusion would be inappropriate here. In *Scarlet Honolulu*, the plaintiffs sprung a new damages calculation on the defendant three weeks before trial—and that new calculation was "factually inconsistent" with the plaintiffs' own complaint. 2024 WL 4224861, at *6. Under those circumstances, the element of surprise—and the resultant prejudice—pushed the Rule 37 factors toward exclusion. The lack of surprise or prejudice here has the opposite effect.

What is more, with trial still over a month away, there is still time for KPRS to produce this calculation now. For that reason, at the hearing on this motion, the court ordered KPRS to produce the required calculation by Friday, October 30, 2026. In that

limited respect, BIE's second motion *in limine* is GRANTED. But with the expectation that KPRS will provide the calculation as ordered, the motion is otherwise DENIED.[2]

### 3. KPRS's Motion *in Limine* No. 1 [Dkt. No. 144]

In its first motion *in limine*, KPRS argues that BIE's final pretrial statement appears to seek to introduce a new damages theory—one unsupported by its proposed experts and unvetted by discovery or motions practice—that is based on "proposed change order 18.R1," or "PCO 18.R1." Dkt. No. 144, at PageID.3181. In response, BIE represents that it does not intend to offer PCO 18.R1 as evidence in support of its delay damages claim at trial. Dkt. No. 159, at PageID.4091 ("[B]y way of this response, BIE is affirmatively stipulating that it will not attempt to introduce PCO 18 R.1 as evidence at trial for the purpose of establishing any amounts it is seeking in connection with its delay damages claim."). In light of that concession, BIE argues that this motion should be denied as moot.

The court agrees with BIE, and KPRS's first motion *in limine* is DENIED as moot. To the extent KPRS is concerned that BIE's counsel will not abide by any such stipulation without a court order, the court has not been given any reason, up to this point, why it cannot trust that counsel will do as they say. If BIE's counsel attempts to

[2] At the hearing, the court authorized BIE to renew its motion by no later than November 6, 2026, if it believes the calculation KPRS supplies is deficient under Rule 26. In the event any renewed motion is filed, KPRS has until November 13, 2026, to oppose it, and the court will take up the matter at the final pretrial conference now scheduled for November 19, 2026.

use PCO 18.R1 to prove damages at trial, KPRS can raise the issue then, and the court will be prepared to intervene.

To be sure, BIE's concession leaves open the possibility that it might seek to introduce PCO 18.R1 for some purpose other than its delay damages claim. KPRS's motion *in limine* did not contend that PCO 18 R.1 was inadmissible for any purpose, so the issue of its admissibility for some other purpose is not currently before the court. *See* Dkt. No. 144, at PageID.3178 (arguing only that PCO 18.R1 should not be offered into evidence, "either through an exhibit, testimony, or argument, *in support of a claim for delay damages*" (emphasis added)). The court will consider the admissibility of PCO 18.R1 for other purposes when it is offered, if indeed it is.

### 4. KPRS's Motion *in Limine* No. 2 [Dkt. No. 145]

KPRS's second motion *in limine* seeks to preclude BIE from admitting a November 6, 2023, letter that one of KPRS's attorneys sent to an attorney representing BIE. According to KPRS, Federal Rule of Evidence 408 precludes its admission. The court agrees.

Rule 408 generally precludes the admission of two types of evidence made during settlement negotiations: (1) "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim," Fed. R. Evid. 408(a)(1), and (2) "conduct or a statement made during compromise negotiations about the claim—except when offered

in a criminal case," Fed. R. Evid. 408(a)(2). Such evidence is "not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradict," Fed. R. Evid. 408(a), though it may be admitted "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution," Fed. R. Evid. 408(b). *See generally Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 980 (9th Cir. 2009).

In the letter at issue here, KPRS's attorney begins by noting that KPRS had "reviewed [BIE's counsel's] October 18, 2023 letter demanding mediation of this matter." Dkt. No. 145-1, at PageID.3258. KPRS's attorney takes the position that "mediation is premature, although it may agree to mediate in the future." *Id.* Instead, KPRS's counsel proposed that KPRS "meet with BIE informally to attempt to resolve these issues" and asked whether "BIE is amenable to meeting." *Id.* What follows are seven paragraphs in which KPRS's counsel describes KPRS's position on several contested issues between the parties. *Id.* at PageID.3258–60. The letter closes with KPRS's counsel reiterating KPRS's "offer of a mutual walk-away," with the alternative that KPRS "is agreeable to meet with BIE and attempt to resolve these issues." *Id.* at PageID.3260. KPRS's counsel closes by requesting that BIE let KPRS know by November 13, 2023, "whether BIE will agree to meet with KPRS Hawaii to attempt an early resolution." *Id.*

This is a textbook settlement communication. It was written by an attorney representing KPRS and sent to an attorney representing BIE. The letter begins by acknowledging that BIE had demanded mediation—a more formal mechanism for attempting to reach a settlement—and instead proposes informal communications between the parties. The letter then explains why KPRS believes its negotiating position is strong. And it closes by inviting BIE to accept KPRS's offer of simply walking away, or alternatively of meeting informally. There is no question the letter constitutes a "statement made during compromise negotiations about the claim," and so is "not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a)(2).

BIE argues that the letter should still be admitted, but its arguments are not persuasive. BIE first argues that, at most, only portions of the letter concern settlement communications. In BIE's view, the "relevant portions of the Letter set forth substantive positions concerning the parties' contractual relationship and K[PR]S's purported termination." Dkt. No. 160, at PageID.4123. And BIE contends that the "inclusion of a reference to a prior compromise proposal does not transform every substantive statement in the Letter nor the entire Letter into an offer of 'valuable consideration' under Rule 408(a)(1)." *Id.* But it is common for attorneys engaged in settlement discussions to describe what they perceive to be the strengths of their client's

position. If only the portions of such communications that explicitly refer to offers of valuable consideration were covered by Rule 408, little would be left of the rule. That is precisely why, although Rule 408(a)(1) covers offers of valuable consideration, Rule 408(a)(2) extends to statements made during those compromise negotiations about the claim. BIE offers no reason why the entirety of the letter would not readily qualify as the latter, and no reason is apparent under the circumstances.

BIE next argues that letter was not transmitted "*during* a mediation." Dkt. No. 160, at PageID.4123 (emphasis added). But letters exchanged in advance of mediations or settlement talks—think mediation or settlement statements—are surely covered, especially if attorneys need to review the statements before any actual meetings. And while it is true that KPRS's letter "*proposed* that the parties meet informally *in the future*," *id.*, that only means the parties were not currently meeting. It does not mean that the attorneys' exchange of letters on the topic of settlement was not part of settlement discussions. At least on this record, it was.

Finally, BIE argues that it has "another purpose" for offering the letter, apart from proving or disproving contested claims. Fed. R. Evid. 408(b). One such purpose, BIE says, is to use KPRS's "statements concerning the parties' performance of the subcontract and K[PR]S's purported termination thereof." Dkt. No. 160, at PageID.4124. But that is not a purpose separate from proving the validity of BIE's claims and the invalidity of KPRS's claims. Alternatively, BIE says that it "intends to introduce the

letter for the purpose of establishing KPRS's purported notice of termination of the parties' subcontract." *Id.* at PageID.4125. In particular, BIE highlights the portion of the letter that states that the "October 3, 2023 letter provided BIE notice of the termination with an effective date." *Id.* at PageID.4125 n.2. It is true that the letter—or at least portions of it—might be admissible if the letter were itself meant to constitute a notice of some action. *See, e.g.*, *id.* at PageID.4126 (citing a district court opinion admitting an employer's letter because it stated that the letter itself "serve[d] as notice of termination"). But that is not what the letter in this case was about. It did not serve to give BIE notice of some act—such as termination of a relationship or otherwise. Instead, it responded to BIE's settlement overtures, made alternative proposals for proceeding with the settlement talks, and described what KPRS viewed as the strong points of its merits position. Along the way, the letter referred to a *prior* letter—from October 3, 2023—in which BIE was given notice of the termination. This was a settlement communication, not a notice. And if BIE wishes to present the jury with evidence of the notice itself, it might perhaps offer the October 3, 2023, letter. Notice is not a basis to introduce the November 6, 2023, letter at issue here.

For the foregoing reasons, KPRS's second motion *in limine* is GRANTED.[3]

---

[3] Because the court excludes the November 6, 2023, letter on Rule 403 grounds, it has no present occasion to resolve KPRS's alternative authentication argument. But to memorialize the helpful discussion the court had with counsel at the hearing (a discussion that could bear on the admissibility of other letters), it will add the following: KPRS's argument (which may not really be an authentication argument, so

### 5. KPRS's Motion *in Limine* Nos. 3 and 4 [Dkt. Nos. 146 and 147]

In its third and fourth motions *in limine*, KPRS seeks to curtail BIE's presentation of evidence in support of its request for damages. The third motion argues that BIE's calculations are inflated and would amount to a request for a windfall. The fourth argues that if BIE's delay damages experts are excluded, then BIE should not be allowed to attempt to provide those damages without an expert.

The third motion is DENIED as premature. As a general matter, the court cannot assess, in this pretrial posture, whether BIE's evidence will amount to a request for a windfall. To the extent that becomes clear at trial, KPRS is free to renew its argument. Moreover, if the jury returns a damages award that is not supported by evidence, KPRS has avenues for relief even from the jury verdict after trial. And as to KPRS's specific argument that BIE should not be allowed to seek a jury award of damages based on attorney's fees, BIE's counsel confirmed at the hearing that it does not intend to ask the jury for damages based on attorney's fees. So there is no need for the court to resolve that more specific issue at this time.

---

much as an argument about what is within the scope of a witness's personal knowledge) is that a recipient of a letter may testify about their own understanding of what the letter means, but may not testify about what the person who wrote it meant. That makes good sense and is consistent with how recipients of oral or written communications typically testify about them. And BIE confirmed at the hearing that it does not expect to do more than that. To the extent it does, the court will consider KPRS's contemporaneous objections at trial. And, of course, no one contests that either party is free to make appropriate jury arguments about how any written document admitted into evidence ought to be interpreted.

That leaves KPRS's fourth motion *in limine*. And the court DENIES that motion because, as we will discuss next, the court will allow BIE's experts to testify at least in part.

### B. The Motions to Exclude BIE's Proposed Expert Witnesses

BIE timely disclosed two proposed expert witnesses, Paul Versage and Lee Pearson, whom BIE intends to call principally on the topic of its claim for delay damages. KPRS has moved to exclude both witnesses. Dkt. Nos. 139 (Pearson) and 140 (Versage). BIE opposed both motions, Dkt. Nos. 168 and 169, and KPRS filed replies, Dkt. Nos. 187 and 188.

The court GRANTS the motions in part and DENIES them in part. The bottom line is that the court will allow both proposed experts to testify—subject to voir dire, which KPRS may conduct before any opinions are offered—but will limit the witness's testimony in certain important respects.

#### 1. The Witnesses Will Be Limited to the Opinions Identified in the Tables in BIE's Supplemental Submission

Before assessing whether the proposed expert opinions should be admitted under the relevant legal standards, the court begins with the question of what proposed opinions must be assessed at all. And it concludes that only sixteen opinions have been preserved for the court's consideration.

Some background is necessary. After reviewing the parties' briefing on the motions, the court determined that it needed additional information from the parties.

As the court explained in an entering order, Dkt. No. 190, the witnesses' joint expert report (the "Sage Report") contains a number of "findings and opinions," some of which appear to be couched in the form of legal opinions. For example, the Sage Report purports to "find" that KPRS "wrongfully" terminated BIE, that KPRS "materially breached" the subcontract, that KPRS's claims "appear retaliatory," and that certain delay is "compensable." *Id.* (citing Dkt. No. 139-4, at PageID.2312 and 2350). The court explained that "[t]o the extent these are legal conclusions, they ordinarily would not be admissible." *Id.* (quoting *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008), for the proposition that a witness's "legal conclusions" were properly excluded because they did no more than "tell the jury what result it should reach"). And while a district court does not necessarily "abuse its discretion in allowing experts to use legal terminology" in the course of offering otherwise-admissible opinions and testimony, *id.* (citing *Nationwide Transp. Fin.*, 523 F.3d at 1060), the court explained that it was "unclear what qualifications or experience [BIE's] proposed witnesses have that would permit them to make references to legal standards at all," *id.* The court added that it was "also unclear, from the submissions to date, whether BIE even wishes to elicit any opinions in the form of legal conclusions." *Id.* And, more broadly, the court observed that "the parties' submissions do not clarify which of the Sage Report's numerous 'findings and opinions'—whether implicating legal conclusions or not—BIE seeks to offer at trial." *Id.*

In short, the court needed "more information from the parties before it c[ould] meet its gatekeeping responsibilities under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and its progeny." *Id.* For that reason, the court directed BIE to file a supplemental brief "in which it identifies precisely which opinions it wishes to elicit from Mr. Pearson and Mr. Versage at trial." *Id.* The court further required that, "[f]or each opinion BIE identifies, it must also (1) briefly summarize what experience or qualifications the witness possesses that, in BIE's view, would render the witness qualified to offer the opinion, and (2) briefly identify what part of the Sage Report or the record more generally would, in BIE's view, afford the court a basis to find that the expert's proposed testimony" meets Rule 702's requirements. *Id.*

BIE timely filed its supplemental brief on October 13, 2026. That brief provided tables specifically identifying eight opinions that BIE seeks to elicit from Pearson and eight that it seeks to elicit from Versage. It also provided the required additional information for each of these opinions. *See* Dkt. No. 191, at PageID.9816–25 (Pearson), 9826–33 (Versage). These are the opinions the court will consider below.

But BIE's supplemental brief also generically asserts that "BIE intends to offer the entirety" of these witnesses' opinions described throughout the Sage Report. *Id.* at PageID.9815, 9825. Those opinions include, notably, opinions in which the witnesses reach conclusions that are essentially legal opinions or that are couched in legal terms.

And so KPRS contends that "only the opinions identified in the tables" should be considered going forward. Dkt. No. 192, at PageID.9839.

The court agrees with KPRS. As the court explained in a subsequent entering order, it had "directed BIE to identify the specific opinions it proposes to offer from these experts at trial," and for that reason, "BIE is cautioned that the court will only consider the admissibility of the specific opinions BIE has identified in the tables in its supplemental brief." Dkt. No. 193. "Any other opinions in the Sage Report but not designated in those tables are, in other words, off the table." *Id.*

What this means is that, at trial, BIE must not seek to elicit any opinions that were not among the sixteen listed in its tables. For example, although the executive summary of the Sage Report includes some of the following "findings and opinions"—that "KPRS wrongfully terminated BIE," that "KPRS's termination and monetary claims appear retaliatory and lacking in good faith," that "KPRS materially breached the Subcontract" in certain respects, and that "KPRS breached its duties in failing to involve BIE in the Audit of its work at termination," Dkt. No. 168-3, at PageID.5192—none of these were included in BIE's tables. Thus, these opinions may not be elicited at trial.

The court notes that, at the hearing on these motions, counsel for BIE confirmed that they did not intend to do more than offer the sixteen opinions listed in its supplement. Accordingly, the court imposes this limitation on the proposed experts' testimony without any objection from BIE.

### 2. BIE's Proposed Expert Witnesses Will Be Allowed to Testify at Trial

As noted, BIE has preserved sixteen of the proposed experts' opinions in the Sage Report for this court's consideration. In particular, BIE seeks to elicit the following opinions from Pearson (Dkt. No. 191, at PageID.9816–25):

1) prolonged building pad preparation for the project caused 82 days of critical delay to BIE's scope of work on the project;

2) HECO engineering and related design delays caused 201 days of critical delay to BIE's scope of work on the project;

3) the structural steel work caused 66 days of critical delay to BIE's scope of work on the project;

4) delays in obtaining the PV installation permit caused 173 days of critical delay to BIE's scope of work on the project;

5) mezzanine redesign and related floor plan resubmittal and approval caused 80 days of critical delay to BIE's scope of work on the project;

6) each of the above delays were caused by parties other than BIE;

7) BIE's work did not extend delays to the overall project; and

8) the above delay events resulted in a total of 171 excusable and compensable days of delay for BIE.

And BIE seeks to elicit the following opinions from Versage (*id.* at PageID.9826–33):

1) KPRS's claim that BIE's work was defective and/or deficient is not adequately supported;

2) KPRS's claims regarding the re-procurement of the Motor Control Center, fire alarm equipment supplied by Siemens, and ACCU are not supported by project documentation;

3) BIE is entitled to recovery of its unpaid pay applications and withheld retention, totaling $499,643.41, in addition to statutory interest;

4) BIE is entitled to recovery of damages for unpaid change orders, totaling $127,556.74;

5) BIE is entitled to delay damages for extended general conditions, totaling $82,134.72;

6) BIE is entitled to delay damages related to job cost overruns, totaling $207,768.12;

7) BIE is entitled to delay damages for unabsorbed home office overhead, totaling $591,317.56; and

8) The purpose of a notice provision regarding delay claims is to avoid an ambush by a contractor at the end of a project; and because the delays on the project (for which BIE claims entitlement) were foreseeable to KPRS, the contractual prerequisites to establishing delay are met.

When presented with proposed expert opinions such as these, the court must play a "gatekeeping role." *Daubert*, 509 U.S. at 597. The terms of admission are set out in Federal Rule of Evidence 702. Under that rule, an expert's opinions are admissible if their proponent demonstrates that it is more likely than not "(1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (citing Fed. R. Evid. 702). In applying these requirements, a court must be mindful that its task is simply "to screen [out] . . . unreliable nonsense

opinions"; it is not to decide "whether the expert is right or wrong." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013) (cleaned up); *see also Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (emphasizing that "Rule 702 should be applied with a liberal thrust favoring admission" (cleaned up)).

There is no dispute that the opinions at issue involved "specialized knowledge" that will "help the trier of fact to understand the evidence or to determine a fact in issue." *City of Pomona*, 750 F.3d at 1043 (cleaned up). Indeed, in its fourth motion *in limine*, KPRS characterizes some of these opinions as "quintessential specialized analyses," and goes so far as to assert that BIE cannot prove its delay damages *without* an expert witness. Dkt. No. 147, at PageID.3341–42. But KPRS argues that BIE has failed to prove any of the other requirements of Rule 702.

KPRS's argument is weakest in its challenge to the proposed experts' qualifications. KPRS argues that Pearson and Versage lack certain, significant qualifications that its own rebuttal expert possesses. All of that may be true, but Rule 702 "contemplates a *broad conception* of expert qualifications," and so "only a *minimal foundation* of knowledge, skill, and experience" is required. *Conservation Council for Haw. v. Haw. Elec. Co., Inc.*, Civ. No. 24-00494, 2026 WL 1113471, at *4 (D. Haw. Apr. 26, 2026) (quoting *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (emphases in original)). The proposed experts here generally clear that bar, even

though KPRS remains free to argue at trial that the jury should discount their testimony because of their lack of certain qualifications.

As to the remaining requirements—that the testimony be based on sufficient facts and data, be the product of reliable principles and methods, and be reliably applied to the facts of this case—the court is similarly satisfied that BIE has made a sufficient showing, though these calls are closer. KPRS makes spirited arguments on each of them, but its arguments merely "function as previews of [its] cross-examinations," and are "based on issues that go to the weight the jury should assign the expert testimony instead of whether it is admissible." *JH Kelly, LLC v. AECOM Tech. Servs., Inc.*, 605 F. Supp. 3d 1295, 1302 (N.D. Cal. 2022). In particular, KPRS contends that Pearson used a flawed baseline schedule, did not conduct an adequately robust apportionment analysis, did not adequately consider all relevant inputs in evaluating delay, and did not have any methodology for categorizing delays as "compensable." Dkt. No. 139, at PageID.2143. KPRS separately contends that Versage's damages calculations should be excluded because they are dependent upon Pearson (who, in KPRS's view, should not be allowed to testify as an expert), are "shallow," and are not as rigorous as those of its own rebuttal expert. Dkt. No. 140, at PageID.2512–13.

But "the existence of a report [such as KPRS's rebuttal report] with conclusions contrary to those of [an] expert witness does not suffice to hold the witness's testimony unreliable." *Francis v. Maersk Lines, Ltd.*, No. C03-2898, 2005 WL 6764504, at *2 (W.D.

Wash. Dec. 8, 2005) (cleaned up). And viewed as a whole, the record supports the conclusion that BIE has made a sufficient showing to withstand Rule 702 and *Daubert* scrutiny, even if KPRS may have identified strong reasons why a jury might reject their testimony at trial. The proposed expert opinions are sufficiently drawn from and based on Pearson's and Versage's extensive experience in scheduling and delay analysis, they reflect an application of the results of their experience (and the methods they have developed from those experiences) to the particulars of this case, the methods are sufficiently reliable and applied with sufficient reliability to clear the low threshold of admissibility, and they would assist the trier of fact in analyzing matters that are concededly the stuff of specialized knowledge.

Moreover, KPRS's contention that Pearson did not have any methodology in deciding what delay counted as "compensable" is not correct: he analyzed who, in his view, was to blame for different aspects of delay, and concluded that to the extent BIE was not at fault and was harmed, that harm is compensable. KPRS has offered arguments for why a jury should reject this analysis, but its methodology is readily discernable and is sufficient to survive Rule 702 and *Daubert* scrutiny. It may be unpersuasive at trial, but it is not an "unreliable nonsense opinion[]" from which the jury must be shielded. *Alaska Rent-A-Car*, 738 F.3d at 969–70. The same is true for each of the eight opinions BIE intends to elicit from Pearson and the first seven that it intends to elicit from Versage.

To be sure, KPRS has identified certain factual matters that BIE's proposed experts have not considered, as well as certain disputed facts that the proposed experts did not try to resolve. And the jury may well find that these facts exist and that their existence renders irrelevant expert opinions that did not consider them. But because it is at least possible that BIE will persuade the jury that any complicating facts that its proposed experts did not consider in fact did not occur, the proposed experts' testimony is at least conditionally helpful to the trier of fact. Of course, the court will be careful not to allow either expert to create the misleading impression that they considered factual matters that they did not, in fact, consider. And the experts will be expected to make clear what factual assumptions they are making, as well as what possible facts they did not take into consideration. KPRS is also invited to request opportunities to conduct voir dire on these matters during the proposed experts' direct examination, to the extent any clarification or fleshing out is needed to ensure an accurate depiction of the limits to the proposed experts' testimony. But with these understandings and safeguards—and subject to revisiting the matter if voir dire produces anything surprising—the court concludes it is generally appropriate to allow the proposed experts to testify.

The eighth proposed opinion from Versage is different, however. Here, BIE seeks to elicit an opinion about the general purpose of notice provisions in construction contracts (and perhaps even the actual purposes of the notice provisions in the contracts

at issue here). *See* Dkt. No. 191, at PageID.9832–33. And his opinion does not obviously arise out of matters that fall within his proffered scheduling analysis expertise—they are not, for example, assessments of which party caused delays or what damages flow from any such delays and are therefore "compensable." Furthermore, BIE has not distinctly offered any basis to conclude that Versage has any legal training or background that would allow him to reliably opine on these topics. *Accord Conservation Council for Haw.*, 2026 WL 1113471, at *18 (excluding an expert's testimony about "roadway lighting safety" because an "expert in one field cannot express an opinion relying on data that requires expertise in another field" (cleaned up)); *see also In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1112–13 (N.D. Cal. 2018) (explaining that an expert's testimony must stay "within the reasonable confines of his subject area" (cleaned up)). He does not, for example, specifically represent that he has participated in negotiations over construction contracts or otherwise gained expert knowledge of the reasons why parties include particular provisions in them. Nor has BIE explained what data or facts Versage has relied on to develop his opinions about the purposes of notice provisions in construction contracts, what principles or methods he used to develop these opinions, or whether he has reliably applied any such principles or methods to the contracts and circumstances in this case.

Nonetheless, at the hearing, BIE represented that Versage's opinions about the purpose of notice provisions flow from his decades of work as a general contractor,

during which he himself dealt with provisions of this sort. Given that representation, the court will reserve decision on whether to allow Versage to offer the eighth opinion listed in BIE's supplemental brief table. The court will only allow Versage to offer that opinion if his recounting of his experiences as a general contractor aligns with BIE's counsel's pretrial prediction.

Accordingly, although KPRS's motions are generally DENIED, the court RESERVES DECISION on whether to preclude Versage from testifying about the purposes of contractual provisions.

//

//

//

//

//

//

//

//

//

//

//

//

## CONCLUSION

In summary, the court resolves the parties' pretrial motions as follows: BIE's Motions *in Limine* Nos. 1 and 2, Dkt. Nos. 142 and 143, are GRANTED in part and DENIED in part; KPRS's Motion *in Limine* No. 1, Dkt. No. 144, is DENIED as moot; KPRS's Motion *in Limine* No. 2, Dkt. No. 145, is GRANTED; KPRS's Motion *in Limine* No. 3, Dkt. No. 146, is DENIED as premature; KPRS's Motion *in Limine* No. 4, Dkt. No. 147, is DENIED; and KPRS's motion to exclude BIE's two proposed witnesses, Dkt. Nos. 139 and 140, are GRANTED in part and DENIED in part, with a decision RESERVED in part.

IT IS SO ORDERED.

DATED: October 30, 2026, at Honolulu, Hawai'i.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge